IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANDRE IBRAHIM, DAVID SIMONTON, DERRAL MITCHELL, BRANDON WALLACE, DEREK DIMRY, KARL MITCHELL, LLOYD ASHFORD<br><br>*Plaintiffs*,<br><br>v.<br><br>**ENCORE WIRE CORPORATION**<br>*Defendant*. | Civil Action No.  3:21-cv-1832<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiffs Andre Ibrahim, David Simonton, Derral Mitchell, Brandon Wallace, Derek Dimry, Karl Mitchell, and Lloyd Ashford (collectively "Plaintiffs") by and through their attorneys, bring this action for damages and other legal and equitable relief from the Defendant's violation of the laws proscribing discrimination based on race, color, national origin, religion and disability, and for acts of retaliation against Encore Wire Corporation ("Defendant" or "Encore Wire").

## INTRODUCTION

This is an action brought by Plaintiffs seeking damages from Defendant for acts of intentional discrimination based on race, color, national origin, religion, and disability, as well as for acts of retaliation because Plaintiffs engaged in protected activity.  Defendant's acts of discrimination and retaliation are in violation of  Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §  2000e *et seq.,* the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq*.; (§  1981"),  § 102 the 1991 Civil Rights Act,  42 U.S.C. § 1981a *et seq*., and Title I of the Americans with Disabilities Act of 1990 ("ADA)," 42 U.S.C. § 12111(2) *et seq*., and

**ORIGINAL COMPLAINT**

42 U.S.C. § 12112(b)(1) and the Texas Employment Discrimination Act, as amended, Tex. Lab. Code  21.001 *et seq.*

## JURISDICTION AND VENUE

1.	This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201;  (iii) 42 U.S.C. § 1981 *et seq.*, as amended and 42 U.S.C. § 1981a *et seq.*, as amended; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.  2000e, *et seq.,* and  pursuant to § 107(a) of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference § 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

2.	Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also proper under §706 of Title VII, 42 U.S.C. § 2000e-5(3)(f) in that the acts complained of herein, including unlawful employment practices, occurred within the federal District over which this Court has jurisdiction.

## PARTIES

3.	At all relevant times, Defendant has continuously been and is now doing business in the State of Texas and has continuously had at least fifteen employees.

4.	At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under § § 701(b), (g) and (h) of Title VII, 42 U.S.C. §2000e-

**ORIGINAL COMPLAINT**

(b), (g) and (h), § 1981 and the Texas Employment Discrimination Act.

5. Encore Wire is a publicly traded company that operates a manufacturing plant producing copper and aluminum building wire. Defendant is headquartered at 1329 Millwood Rd, McKinney, TX 75069.

6. At all relevant times, Plaintiffs were employees of Defendant as that term is defined in Title VII, § 1981 and the Texas Employment Discrimination Act.

7. Plaintiffs are African-American.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

8. Plaintiffs have each timely filed a charge of discrimination with the EEOC, which constitutes across-filing with the Texas Commission on Human Rights. Plaintiffs received or requested their Notices of Right to Sue from the EEOC within ninety (90) days prior to the filing of this Complaint.

## FACTS UNDERLYING CLAIMS

9. At all times during Plaintiffs' employment with Defendant, Plaintiffs' supervisors were Hispanic. Often, these supervisors and also peers made unwelcome, severe and/or pervasive comments about Plaintiffs' race, religion, color, and national origin.

10. For years, Plaintiffs were subjected to unlawful racial discrimination. This discrimination included harassment and disparate treatment. For example, Plaintiffs were consistently subjected to degrading comments about their race. This included the use of race-based words such as "boy" and the "n-word." Further, Plaintiffs were less likely to be promoted and faced disparities in pay compared to their counterparts. The Plaintiffs' experienced disparate treatment in the terms and conditions of their employment. For example, the first and only African-

**ORIGINAL COMPLAINT**

American placed in a leadership position at Plant Three was not provided the safety materials necessary to perform his Leadman position.

11. Additionally, African-American employees were not properly trained for their roles while Hispanic employees were offered needed training. African-American employees faced wide pay and promotion disparities and were not offered the same workplace opportunities.

12. In addition to race-based discrimination, certain Plaintiffs were subjected to national origin discrimination. Certain employees at Defendant's plant are from African countries. These employees faced questions such as whether they "used spears to hunt down animals and things like on TV," and one such Plaintiff was subjected to comments about the size of his genitalia.

13. Defendant also committed religious discrimination against its employees. When one of the Plaintiffs, who is Muslim, attempted to complete his daily prayers on his breaks, Defendant informed him he was not allowed to pray.

14. When African-American employees attempted to complain to management about any of these discriminatory comments or actions, they were subjected to retaliation by the Defendant. Many of the Plaintiffs feared for their jobs after reporting, as it was commonly known that Supervisor Danny Marr would engage in retaliation.

15. Defendant subjected Plaintiffs to retaliation in the form of disparate discipline. For example, African-American employees were disciplined for mistakes on machinery that they did not commit or were committed by others. Further, even upon knowledge that these mistakes were not committed by African-American employees, the disciplinary reports were not changed. African-American employees were disciplined for actions for which Hispanic employees were not punished.

**ORIGINAL COMPLAINT**

## INDIVIDUAL ALLEGATIONS OF THE PLAINTIFFS

### Andre Ibrahim

16.     Andre Ibrahim, who is Black and from the African nation of Gabon, was employed by Defendant as a Line Operator at Plant Three from 2011 to 2013, and in the Quality Control Labor Department at Plant One from 2013 until his discriminatory termination in 2018.

17.     Throughout his employment at Encore Wire, Mr. Ibrahim was subjected to discrimination and a hostile work environment based on his race, color, national origin, and religion.

18.     In particular, Mr. Ibrahim was ridiculed for his French accent and the type of music that he liked to play. In addition, he had false workplace complaints lodged against him. He reported this behavior to HR Manager Brad Donovan, but there was no corrective response.

19.     Mr. Ibrahim was retaliated against following his report of discrimination. He was given negative performance reviews and denied raises and promotions.

20.     Mr. Ibrahim was also subjected to discrimination based on his religion. Mr. Ibrahim is a practicing Muslim, whose religious beliefs required that he pray five times a day. Mr. Ibrahim used his breaks to pray, and the prayers did not interfere with his ability to work. However, he was informed he must stop praying at work because co-workers had made complaints.

21.     Mr. Ibrahim was suddenly terminated in 2018 for purported violation of a nepotism policy. Yet there were white and Hispanic married couples employed and the reason for his termination was a pretext for race and religious discrimination, and in retaliation for his report of discrimination.

### David Simonton

22. David Simonton was employed by Defendant from March 2017 to October 2019 as a Machine Operator.

23. Mr. Simonton was subjected to discrimination based upon race and color, and witnessed discrimination by his supervisor based on national origin. Upon information and belief, if an employee attempted to complain about this behavior the supervisor would retaliate by transferring the employee to a worse position or terminating the reporting employee. The disparate treatment Mr. Simonton faced included disparate discipline. For example, Mr. Simonton witnessed an African-American employee get written up for a machine malfunction that a Hispanic worker had caused. Mr. Simonton attempted to explain that this was not the African-American employee's mistake, and requested management to delay the write-up until the Hispanic employee was questioned. The supervisor refused and did not change the disciplinary report even when the Hispanic employee admitted to the mistake the following day.

24. Mr. Simonton also heard frequent discriminatory comments from Supervisor Danny Marr. Mr. Marr made comments such as asking if one of the African employees "used spears to hunt down animals and things like that on TV." Mr. Marr also discussed the size of an African employee's genitals.

25. In or around October 2019, Mr. Simonton was Lead on a night shift. During this shift he instructed a white coworker to shut off his machine and help with unloading a truck. The white employee refused, and the machine malfunctioned. The white coworker left the plant thereafter, and Mr. Simonton's supervisor told him "not to worry about it."

26. The next day Mr. Simonton attempted to ask the white employee why he had not shut the machine down as requested. In response, the white employee said that he did not have to

**ORIGINAL COMPLAINT**

listen to Mr. Simonton and threatened to fight him. This employee had previously been sent home from work and written up for such conduct. The white employee was never punished for his involvement in this argument. Mr. Simonton, however, was sent home and terminated. His supervisor, Mr. Marr, refused to listen to his explanation of the encounter. During his time with Encore Wire, Mr. Simonton had never been disciplined for a work infraction.

### Derral Mitchell

27. Derral Mitchell was employed by Defendant from March 2017 to October 2019. During this time Mr. Mitchell was a Radex Operator.

28. On multiple occasions Mr. Mitchell overheard white and Hispanic coworkers making jokes using the "n-word." Mr. Mitchell never made a complaint for fear of retaliation, as, upon information and belief, his supervisor was known to get rid of people who complained about their treatment.

29. Mr. Mitchell's nephew, Karl Mitchell, filed an EEOC charge against the Defendant. Following the filing of the charge, Derral Mitchell faced retaliation at work.

30. Mr. Mitchell was called into the management office shortly after the EEOC charge was filed to inquire about Karl Mitchell's claims. Mr. Derral Mitchell stated he did not have knowledge of Karl Mitchell's claims, and only saw Karl at family gatherings.

31. Following this meeting, Mr. Mitchell was targeted for write-ups. Prior to the EEOC charge, Mr. Mitchell had never been written up. Thereafter, Mr. Mitchell began to be written up for purported infractions that he had never committed. For example, an employee made a mistake that caused a machine malfunction. Mr. Mitchell was written up for this mistake, even though one witness and the employee that damaged the machine informed the supervisor that Mr. Mitchell did not make the mistake. The write-up was never rescinded.

**ORIGINAL COMPLAINT**

32. When Mr. Mitchell attempted to discuss unwarranted and discriminatory write-ups given by his supervisor, the Plant Manager dismissed his concerns. He was not allowed to transfer shifts. The Plant Manager told him to "work around it," and said, "I know you think it hurts you, but it really doesn't."

33. Mr. Mitchell was constructively discharged because of the stress caused by these unwarranted discriminatory and retaliatory disciplinary actions based on his race and color.

### Brandon Wallace

34. Brandon Wallace worked for Defendant from July 2017 to September 2017as an Order Puller.

35. Mr. Wallace was originally hired for a welding position. However, when he began to work, he was instead assigned as an Order Puller. The pay of Order Pullers is lower than that of welders who work for Defendant. Mr. Wallace needed extra training for the Order Puller role. However, Defendant failed to train him; management said that the company was too busy to do so. Yet, soon after this incident, a Hispanic employee was hired in the same position and was properly trained.

36. Mr. Wallace attempted to complain about the disparate training opportunities to the Assistant Plant Manager, but no corrective action was taken. Instead, he was harassed and retaliated against. He was not allowed a requested change in workdays and witnessed discrimination in wages, discipline, and promotions between African-American and Hispanic employees at Encore Wire.

37. In or around August/September 2017, Mr. Wallace was constructively discharged because of the discriminatory treatment and retaliation he experienced and observed.

**ORIGINAL COMPLAINT**

### Derek Dimry

38. Derek Dimry, who is of mixed-race, worked at Encore Wire from June 2017 to September 2017 as a Machine Operator.

39. Mr. Dimry was subjected to a hostile work environment and racial and color discrimination. He faced daily slurs and disparate treatment from his supervisors and coworkers. In particular, the Lead Operator did not call him by his name, but instead called him "Mixed" in reference to his race and the color of his skin. These comments were made in front of supervisors and the Assistant Plant Manager, but no corrective action was taken.

40. Mr. Dimry decided to report the harassment to Human Resources. Following this report, no corrective action was taken, and Mr. Dimry became the target of retaliation. Mr. Dimry was not allowed to take breaks, was disciplined more harshly than co-workers, and was not allowed to schedule days off.

41. Mr. Dimry also experienced pay and discipline disparities compared to his Hispanic co-workers who worked the same job and had the same level of experience.

42. Mr. Dimry was constructively discharged in September 2017 due to the discrimination and retaliation he experienced working for Defendant.

### Karl Mitchell

43. Karl Mitchell was employed at Defendant's Plant Number Three from July 2016 to August 2017 as a Leadman Machine Operator. During this time Mr. Mitchell was the first and only African-American individual in a supervisory position at Plant Number Three.

44. As the only African-American in a Leadman position, he was also the only Leadman denied keys to access gloves, safety glasses, and face shields for his employees. This lack of access negatively affected both his safety and the safety of others on his shift.

45. Mr. Mitchell also faced wage and promotion disparities. Despite receiving positive performance evaluations for his hard work, he was never given a pay raise. Further, Mr. Mitchell was consistently harassed by a Hispanic manager who refused to allow him to take lunch breaks, threatened to demote him, and failed to provide him with proper training. When Mr. Mitchell asked to be considered for an open supervisor position, his requests were ignored.

46. Mr. Mitchell experienced disparate discipline between himself and his Hispanic coworkers. He was routinely written up and/or suspended for mistakes which Hispanic employees regularly made with little or no repercussions.

47. Mr. Mitchell was also discriminated against through race-based remarks directed towards him. For example, he was called "boy" on multiple occasions.

48. Mr. Mitchell complained both verbally and in writing about the discrimination he experienced and observed. No corrective action was taken.

49. Mr. Mitchell was purportedly terminated due to a forklift accident. This reason for discharge was a pretext for discrimination and in retaliation for reporting discrimination.

### Lloyd Ashford

50. Lloyd Ashford was a Forklift Driver at Encore Wire from June 2017 to March 2018.

51. Mr. Ashford was repeatedly subjected to discrimination and a hostile work environment based on his race. For example, Mr. Ashford was repeatedly called "boy" or the "n-word" by coworkers and supervisors. Additionally, one of his supervisors began following him into the bathrooms and filming him.

52. In November 2017, Mr. Ashford reported the harassment and discrimination to Human Resources. No corrective action was taken against the perpetrators, and Mr. Ashford was involuntarily transferred to Plant Number Six.

**ORIGINAL COMPLAINT**

53. Following his removal to Plant Six, Mr. Ashford had surgery for a hernia. After time off following the surgery, he had a light lifting restriction that was required for an extensive period of time. He was supposed to be placed on light duty, as an accommodation for his disability. However, immediately after his return to work following the surgery, Mr. Ashford was moved to a different area of Plant Six that required him to lift heavy items, contrary to his lifting restrictions. Mr. Ashford reminded his supervisor that he was supposed to be on light duty and brought the issue of his need for accommodation to the attention of HR. In response, the HR employee told Mr. Ashford "I'm tired of you. We're all tired of you." The HR employee then had Mr. Ashford escorted from the building. One day later, Mr. Ashford was terminated due to his race, due to his disability, and in retaliation for engaging in protected activity, including reporting race discrimination and harassment and reiterating his need for an accommodation.

## CAUSES OF ACTION

### Count I

### EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE
*42 U.S.C. § 1981 et seq.*

54. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

55. The conduct alleged herein violates 42 U.S.C. § 1981, *et seq.*, as the Defendant has engaged in the practice of race discrimination including but not limited to subjecting the Plaintiffs to a racially hostile work environment, disparate treatment and termination based on their race, African-American.

56. Plaintiffs' requests for relief are set forth below.

**ORIGINAL COMPLAINT**

## Count II

### EMPLOYMENT DISCRIMINATION – RETALIATION
*42 U.S.C. § 1981 et seq.*

57. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

58. Plaintiffs reported to management and HR the discriminatory treatment to which they were subjected.

59. Defendant retaliated against all Plaintiffs.

60. The Plaintiffs' requests for relief are set forth below.

## Count III

### EMPLOYMENT DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN
*42 U.S.C. § 1981 et seq.*

61. Plaintiff Andre Ibrahim repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

62. The conduct alleged herein violates 42 U.S.C. § 1981 *et seq.* as the Defendant has engaged in the practice of national origin discrimination against Mr. Ibrahim.

63. The Plaintiff's requests for relief are set forth below.

## Count IV

### EMPLOYMENT DISCRIMINATION ON THE BASIS OF RELIGION
Title VII of the Civil Rights Act of 1964, as amended
*42 U.S.C. § 2000e et seq.*

64. Plaintiff Andre Ibrahim repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

**ORIGINAL COMPLAINT**

65. The conduct alleged herein violates Title VII as the Defendant has engaged in the practice of discrimination against Mr. Ibrahim based on his religion, Islam, and by denying him a reasonable accommodation of his religious beliefs.

66. The Plaintiff's requests for relief are set forth below.

### Count V

### EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE
Title VI of the Civil Rights Act of 1964, as amended
*42 U.S.C. § 2000e et. seq.*

67. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

68. The conduct alleged herein violates Title VII as the Defendant has engaged in the practice of discrimination against the Plaintiffs named herein based on their race, African-American, by subjecting them to a racially hostile work environment and disparate treatment in the terms and conditions of their employment, including their termination or constructive discharge.

69. Plaintiffs' requests for relief are set forth below.

### Count VI

### EMPLOYMENT DISCRIMINATION – RETALIATION
Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. § 2000e *et. seq.*

70. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

71. Plaintiffs reported to management and HR the discriminatory treatment to which they were subjected.

**ORIGINAL COMPLAINT**

72. Defendant retaliated against all Plaintiffs as to the terms and conditions of their employment including but not limited to the retaliatory discharge of Mr. Ibrahim, Mr. Simonton, Mr. Ashford and Mr. Karl Mitchell.

73. The Plaintiffs' requests for relief are set forth below.

### Count VII

**EMPLOYMENT DISCRIMINATION VIOLATION OF ADA**
*Discrimination , Failure to Accommodate, Retaliatory Discharge*
*Title I of the ADA, 42 U.S.C. § 12111(2) et seq., and 42 U.S.C. § 12112(b)*

74. Plaintiff Lloyd Ashford repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

75. At the time of his employment, Mr. Ashford was disabled with a hernia under the ADA.

76. Defendant failed to reasonably accommodate Plaintiff's disability in violation of 42 U.S.C. § 12111.

77. Defendant terminated Mr. Ashford based on his disability; for reporting discrimination, and for requesting a reasonable accommodation in violation of the ADA.

78. The Plaintiff's requests for relief are set forth below.

### Count VIII

**EMPLOYMENT DISCRIMINATION – RETALIATION**
*Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 et seq.*

79. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

80. Plaintiff(s) reported to management and HR the discriminatory treatment to which they were subjected, as well as made verbal complaints to supervisors.

81. Defendant retaliated against all Plaintiffs due to their complaints of discrimination.

**ORIGINAL COMPLAINT**

82. The Plaintiffs' requests for relief are set forth below.

### Count IX

**EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE**
*Systemic Hostile Work Environment*
Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*

83. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

84. The conduct alleged herein violates Tex. Lab. Code § 21.051, as the Defendant has committed discrimination on the basis of race in the terms and conditions of their employment and by subjecting the Plaintiffs to a hostile work environment based on race during the relevant time period.

85. Plaintiffs' requests for relief are set forth below.

### Count X

**EMPLOYMENT DISCRIMINATION ON THE BASIS OF COLOR**
*Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 et seq.*

86. Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

87. The conduct alleged herein violates Tex. Lab. Code § 21.051, as the Defendant has committed discrimination on the basis of color against the Plaintiffs during the relevant time period.

88. Plaintiffs' requests for relief are set forth below.

**ORIGINAL COMPLAINT**

## Count XI

**EMPLOYMENT DISCRIMINATION ON THE BASIS OF RELIGION**
*Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 et seq.*

89. Plaintiff Andre Ibrahim repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

90. The conduct alleged herein violates Tex. Lab. Code § 21.051, as the Defendant has committed discrimination on the basis of his religion, Islam, and failed to reasonably accommodate his religious beliefs.

91. Plaintiff's requests for relief are set forth below.

## Count XII

**EMPLOYMENT DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN**
*Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 et seq.*

92. Plaintiff Andre Ibrahim repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

93. The conduct alleged herein violates Tex. Lab. Code § 21.051, as the Defendant has committed discrimination on the basis of his national origin, African, against the Plaintiff during the relevant time period.

94. Plaintiff's requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, pray for the following relief:

- That the practices of the Defendant complained of herein be determined and adjudged to be in violation of the rights of the Plaintiffs under the federal and state laws identified above prohibiting discrimination and retaliation in employment;

**ORIGINAL COMPLAINT**

- That judgment be entered in favor of Plaintiffs as set forth herein, and against Defendant, for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiffs;

- That the Plaintiffs be awarded compensatory damages for their hostile environment claims;

- That the Plaintiffs be awarded punitive damages;

- That the Plaintiffs be awarded pre- and post-judgment interest;

- That the Court award Plaintiffs reasonable attorneys' fees and costs associated with this matter, including but not limited to expert fees and costs;

- That the Defendant be ordered to require training regarding race, color, national origin, religion and disability discrimination, including accommodation of religious beliefs and accommodation of disabilities;

- That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law; and

- That the Plaintiffs be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: August 5, 2021

Respectfully submitted,

 /s/ Jay D. Ellwanger
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
**ELLWANGER LAW LLLP**
400 S. Zang Blvd. Ste. 600
Dallas, Texas 75208

**ORIGINAL COMPLAINT**

Telephone: (469) 998-6775
Facsimile:  (469) 998-6775

James A. Vagnini (*Pro Hac Vice* to be filed)
jvagnini@vkvlawyers.com
Monica Hincken (*Pro Hac Vice* to be filed)
mhincken@vkvlawyers.com
**VALLI KANE & VAGNINI LLP**
600 Old Country Road, Ste. 519
Garden City, New York 11530
Telephone:  (516) 203-7180

*Counsel for Plaintiff*

**ORIGINAL COMPLAINT**